**UNITED STATES v. UNITED STATES CARTRIDGE CO.**

No. 2486.

District Court, E. D. Missouri, E. D.

May 21, 1948.

See, also, D.C., 6 F.R.D. 352.

Drake Watson, U. S. Atty., of New London, Mo., William V. O'Donnell, Asst. U. S. Atty., of St. Louis, Mo., H. G. Morison, Asst. Atty. Gen., and Joseph M. Friedman, Chief, Frauds Section, George W. Meuth and J. Gregory Bruce, all of the Department of Justice, all of Washington, D. C., for plaintiff.

Bryan, Cave, McPheeters & McRoberts, Rhodes E. Cave, R. H. McRoberts and Marion S. Francis, all of St. Louis, Mo., for defendant.

HULEN, District Judge.

By answer to the amended complaint pleading an action for statutory fraud un-

der Sections 3490, 3493, Revised Statutes, Tit. 31 U.S.C.A. §§ 231–234, defendant alleges certain defenses by way of estoppel or bar to plaintiff's case. Plaintiff moves to strike these defenses and the motion is before the Court for ruling.

The complaint, in substance, recites: Plaintiff contracted with defendant in December 1940 for the manufacture of ammunition. Under the contract defendant manufactured and delivered ammunition for which it was paid in excess of fourteen million dollars. The answer sets forth that following termination of hostilities, on June 27, 1945, plaintiff notified defendant of termination of the contract pursuant to its terms. The termination notice gave detailed instructions for procedure of termination, which, among other things, instructed the defendant:

"(c). Immediately after the termination date (or before, if practicable) initiate and diligently endeavor to satisfactorily conclude, with the approval of the Contracting Officer, negotiations for the prompt and proper settlement of all subcontracts, commitments and other obligations to the extent that the same are chargeable to the Contract, all such cancellations and settlements to be accomplished under the Contract Settlement Act of 1944, the Joint Termination Regulation and other relating and governing War Department regulations."

In due course defendant submitted certain claims to the Government resulting from the termination of the prime contract with the result that on the 30th day of August, 1946, the parties entered into a supplemental contract.

The supplemental contract is the basis of several defenses set up in the answer and under consideration. We quote a paragraph indicative of the subject matter of the supplemental contract:

"Whereas, the Act declares that upon the termination of any war contract (as therein defined) in whole or in part for the convenience or at the option of the Government, it shall be the responsibility of the contracting agency (as therein defined) to provide the war contractor with speedy and fair compensation for the termination of the war contract and provides that any contracting agency may settle all, or any part of any termination claim under any war contract by agreement with the war contractor; and"

A further paragraph in this contract, relied upon by the defendant as a basis for defenses pled, reads as follows:

"Whereas, the Contracting officer, as evidenced by his execution of this instrument, has administratively determined that the Contractor has satisfactorily completed all of its work and satisfactorily performed all of its obligations under the Contract, except as otherwise provided herein and has satisfactorily accounted for and delivered to the Government all property, real and personal, materials, supplies and funds which have come into its possession and for which it is chargeable, and the Contractor is hereby expressly relieved and released from all accountability and responsibility therefor or in any way connected therewith."

Defendant was paid $463,596.64 as the amount due it under the contract. The supplemental contract recites:

"Said sum, together with all other sums heretofore paid, constitutes payment in full and complete settlement of the amount due the contractor by reason of the termination of work, or otherwise, under the Contract and of all other claims of the Contractor under the Contract and under the Act, insofar as it pertains to the Contract, except as hereinafter provided.

"(c) Upon payment of said sum * * * as aforesaid, all rights and liabilities of the parties under the Contract and under the Act, insofar as it pertains to the Contract, shall cease and be forever released except:"

Here follow thirteen paragraphs of exceptions. The ninth paragraph is material to this controversy. We quote:

"(9) All rights and liabilities of the parties arising under the contract articles, if any, or otherwise, concerning defects in, and guarantees or warranties relating to, any completed articles or component parts furnished to the Government by the Contractor pursuant to the Contract or this Agreement."

The complaint is based on the fraud statute providing a forfeiture of $2,000.00 in

addition to double damages sustained by the Government, resulting from the making and presenting for payment or approval of false claims against the Government. Section 3492 of the fraud statute, 31 U.S.C.A. § 233, provides that the "several district attorneys of the United States" are charged with initiating proceedings for recovery of forfeitures and damages.

The defenses pled and challenged by the Government's motion are, (9th) that under the prime contract all disputes concerning questions of fact were to be decided by the Contracting Officer, and that all disputes between plaintiff and defendant with respect to the matter set forth in the complaint have heretofore been decided by the Contracting Officer in favor of the defendant; (10th) that plaintiff, acting through its "authorized officer * * * administratively determined" that the defendant had satisfactorily completed execution of the prime contract and "satisfactorily accounted for * * * all funds which had come into its possession and for which it was chargeable, and by such administrative determination the plaintiff is barred and estopped from asserting the claims for amounts received by defendant in the payment of the fixed fees" referred to in the complaint; (11th) that by the terms of the prime contract all disputes concerning questions of fact arising under it were required to be decided by the Contracting Officer and any such disputes not heretofore decided are referable to arbitration by the Contracting Officer and that the acts and things alleged in the complaint are subject to arbitration under the contract; the defendant would stay this action until such arbitration has been had; (12th) that by the supplemental contract all matters alleged in the amended complaint were compromised and finally settled; (13th) that by the supplemental contract plaintiff released the defendant from all liability for any act mentioned in the amended complaint; (14th) that under the supplemental contract an accord was reached as to the extent of any liability of defendant to plaintiff, including all the acts referred to in the amended complaint, and the amount agreed upon was paid by defendant to plaintiff in satisfaction of all such damages or liability; (15th) that by the supplemental contract plaintiff acknowledged defendant had satisfactorily performed the prime contract and released defendant from all accountability under it; and (16th) that by the supplemental contract plaintiff confirmed the right of defendant to retain all sums of money paid it by plaintiff under the prime contract, including the sums for recovery of which the complaint herein was filed; all by reason of which plaintiff is now barred and estopped from recovering the sums sought by the amended complaint herein.

Plaintiff and defendant present their positions on the motion as calling for a ruling solely on a question of law and request the Court's decision on the law question raised by the motion. We make this observation because at first glance there would appear to be some question of sufficiency of the record for ruling, but both parties concede the record is complete and sufficient.

▆▆ At the outset let the nature of this action be determined. By the statute referred to plaintiff seeks penalty and double damages resulting from the commission of criminal acts commonly known as war frauds. By the ninth and eleventh defenses defendant seeks to bar the action because (9th) under the prime contract questions of fact arising under it are subject to decision by the Contracting Officer, and (11th) any disputes not heretofore decided are subject to arbitration. The intention of the war frauds statute appears plain. Prosecution for damages and penalty resulting from acts covered by the statute is placed in charge of the District Attorney. They subject the wrongdoer to criminal prosecution as well as civil liability. To take from the Department of Justice disposition of this character of case and place it in the hands of a Contracting Officer, representing not the Department of Justice but the War Department, would require a statute or order specific in langauge and such as to leave no doubt as to the intent of Congress or the President. We have found no such statute or order. It is our conclusion that a Contracting Officer has no authority to determine or settle liability to the Government under the war frauds act. The Contracting Officer under the

prime contract has power to administratively settle disputes of fact arising in the execution of a contract, not crimes in the nature of frauds of fact resulting from its execution. War frauds do not result from disputes of fact. They grow out of criminal acts. Fraud is never presumed but must be proven. The parties never contracted that if defendant in the execution of the contract committed fraudulent acts, and subjected the wrongdoer to criminal action, liability resulting therefrom would be a matter of settlement by the Contracting Officer, or arbitration. No one would claim that by such process criminal responsibility could be eliminated. Neither can civil responsibility under the same statute.

■ Passing to the remaining defenses attacked by the motion (10, 12, 13, 14, 15 and 16), what has been said with reference to defenses 9 and 10 applies to them. There is a further reason why these defenses cannot stand under the record presented. The very contract relied upon by defendant to bar plaintiff's action specifically exempts settlement of liability of the kind on which the complaint is based. (See exemption 9.) The supplemental contract, after reciting the consideration and relieving defendant from all liability under the prime contract, excepts certain character of liability (sub-paragraph 9) as follows:

"All rights and liabilities of the parties arising under the contract articles, if any, or otherwise, concerning defects in, and guarantees or warranties relating to, any completed articles or component parts furnished to the Government by the Contractor pursuant to the Contract or this Agreement." .

The charges contained in the complaint may be summarized:

"that certain ammunition had been submitted for acceptance without having been subjected to satisfactory visual inspection, (b) that certain ammunition was submitted for acceptance as Grade A which had not passed the inspection requirements for Grade A, (c) that certain ammunition had been packed which had not been submitted for sampling and testing, (d) that certain ammunition had been packed which had been rejected or had not been submitted for approval, (e) that certain ammunition had been submitted for acceptance which had been previously submitted and rejected and had not been reinspected or had received only random or spot checking, (f) that certain rejected ammunition was resubmitted accompanied by certificates falsely stating that it had been regaged and reweighed, (g) that the weighing and gaging machines were set so as to fail to throw out cartridges which varied to a greater extent than a maximum tolerance, and (h) that defective component parts of cartridges were permitted to flow into production and become part of lots of ammunition which the Government accepted, and that by reason of all of the said acts each lot of ammunition produced during the period in question was contaminated and rendered unsuitable for use."

These charges all concern, and under the complaint the Government must prove fraud by defendant respecting the defects in guarantees and warranties relating to "completed articles or component parts furnished to the Government by the Contractor pursuant to the Contract."

Defendant's argument is ingenuous. It may be summarized as follows:

"So in the present case the Government, by its simple contract, executed by its duly authorized agent, the Contracting Officer, whose authority was ultimately derived from the Contract Settlement Act, has agreed that the defendant has received certain fixed fees for services performed, has confirmed and acknowledged the right of the defendant to retain such fees, has agreed that such fees constitute a portion of the total amount to which the defendant is entitled in complete and final settlement of its contract with the Government, and has agreed that such fees, together with other sums paid, constitute payment in full and complete settlement of the sum due the defendant under the contract. This contract, and the facts established by this contract, are pleaded by the defendant as a bar and an estoppel against any attempt on the part of the Government to take a contrary position in this litigation, or to prove a different set of facts to exist."

■ We think the record plainly shows plaintiff and defendant neither settled nor attempted to settle, by the supplemental

contract, the cause of action contained in the complaint. This suit was pending when the supplemental contract was executed. To this Court it is incomprehensible that the parties, negotiating the supplemental contract, would have considered settlement of the present action, to say nothing of its settlement, without someone—somewhere—at sometime during the proceeding, referring to this action. There is not even a claim of such an incident. On the contrary the supplemental contract at the very outset declares that upon the termination of the prime contract by the Government it shall be the responsibility of the contracting agency of the Government to provide the defendant with a speedy and fair compensation for the termination of the prime contract and that the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., declares that the contracting agency of the Government settle "all or any part of any termination claim under any war contract". The supplemental contract settled claims of the defendant against plaintiff resulting from termination of the prime contract. The exhibits presented in support of the Government's motion show specific items presented by the defendant in support of its claim. Take Exhibit N for illustration, a settlement proposal made by the defendant. It contains 18 items all showing a purpose to settle within the spirit and purpose of the Contract Settlement Act of 1944.

The authority of the Contracting Officer, relied on by defendant, to negotiate settlement of the prime contract must be found in the Contract Settlement Act of 1944, Public Law 395, 78th Congress. It specifically excludes claims "for fraud". See Section 6(c):

"Any contracting agency may settle all or any part of any termination claim under any war contract by agreement with the war contractor, or by determination of the amount due on the claim or part thereof without such agreement, or by any combination of these methods. Where any such settlement is made by agreement, the settlement shall be final and conclusive, except (1) to the extent otherwise agreed in the settlement; (2) for fraud; (3) upon renegotiation to eliminate excessive profits under the Renegotiation Act, unless exempt or exempted under the Act; or (4) by mutual agreement before or after payment."

A final answer to defendant's position as contained in defenses 9 to 16, inclusive, is that Government agents relied upon by defendant as having executed, or authorized to execute, a settlement of the liability alleged in the complaint, were without authority in law to settle and dispose of any of the liability claimed in this case. See Section 5 of Executive Order 6166, dated June 10, 1933, 5 U.S.C.A. § 132 note, pursuant to 47 Stat. 1518, Chap. 212, Sec. 403. We quote:

"Section 5. Claims by or against the United States.

"The functions of prosecuting in the courts of the United States claims and demands by, and offenses against, the Government of the United States, and of defending claims and demands against the Government, and of supervising the work of United States attorneys, marshals, and clerks in connection therewith, now exercised by any agency or officer, are transferred to the Department of Justice.

"As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, *or to compromise,* or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice." (Emphasis added.)

We cannot agree with defendant this order has been recalled, modified or repealed by legislative or executive action.

Citation of authority is not necessary to support the proposition that the Government is not bound by acts of its officer which are not within the scope of the conferred authorities. The defendant in dealing with the Contracting Officer, both during execution of the prime contract and during and at the time of signing the supplemental contract, was chargeable with notice of extent of authority of the Contracting Officer. We conclude the Government's motion should be sustained.

### Order

Paragraphs numbered 9 to 16, inclusive, of the defendant's answer to the amended

86

complaint are stricken from the answer because the allegations of said paragraphs do not constitute a lawful defense to any of the matters and charges set forth in the complaint.