**STATE TENT & CANVAS COMPANY, Inc.,**

v.

**The UNITED STATES.**

**No. 194-54.**

United States Court of Claims.

April 5, 1955.

Charles O. Blaisdell, New York City, for plaintiff. Blaisdell & Dunne, New York City, were on the briefs.

Thomas H. McGrail, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff brought this suit to recover $13,173.60 alleged to be due it under two contracts, Nos. UNR–TPS–1351 and 1353, dated January 17, 1946, with the Treasury Department, under which plaintiff contracted to sort, package and ship miscellaneous articles of clothing for UNRRA. Plaintiff alleges, and so far as it appears, it performed the contracts.

On May 3, 1946, there was sent to plaintiff a letter from the Procurement Division of the Treasury Department, with which the contracts had been made, signed by Frank D. Tippett, Chief, Lend Lease Division, Region 3, which, so far as material here, is as follows:

"This communication will confirm my telephone conversation of 4:30 P. M. this date, at which time I directed you at the request of Mr. C. E. Boswell, Chief of the Liberated Areas, Procurement Division, Treasury Department, to prepare for shipment by box-car to the Port of Philadelphia, Pennsylvania, for loading there into a vessel on or before May 15, 1946, the following clothing.  *  *  *

"No M–1 category is to be included. The above total will be one million pounds (1,000,000#), or as near to that figure as possible.

"I have been notified by Mr. Boswell that shipping instructions will be forthcoming to you from the New York Transportation Branch by telegram on Monday, May 6, 1946. A copy of this communication is being mailed to Inspector Klatt and Supervising Inspector Wilson.

"Categories A–1, A–2, B–1, B–2, C–1, C–2, D–1, E–1, O–1, Y–1 must bear an additional marking other than the prescribed markings, and that marking is to be the word 'Hungary' in four inch letters.

"Due to the fact that it will be difficult to stencil the bags holding categories S–1, S–2, S–3, and S–4 with four inch letters, the stenciling of these bags with the word 'Hungary' will be acceptable in two inch letters.

"The cost of the destination marks 'Hungary' will be borne by UNRRA, and you are to submit invoices covering these costs to this office. The costs of this extra marking will be eighty cents ($.80) per bale or sack."

Under such purported authorization the plaintiff, on May 13 and 16, 1946, submitted claims totaling $13,173.60 alleged to be due for the additional stenciling and marking, as per letter of May 3, 1946. The Treasury Department, with which the contracts had been made, denied the claim and refused to pay the same, and on May 28, 1948, plaintiff, which apparently had submitted its claim to the Comptroller General, was notified by that official that the claim for $13,173.60 was disallowed and payment refused.

The petition in this court was filed on May 26, 1954.

If the person who wrote the letter of May 3, 1946, had authority to issue a change order in the contract, and, if plaintiff complied therewith and marked and shipped the goods as required by the contract, plaintiff's cause of action first accrued when the goods in question were shipped to Philadelphia, on or before May 15, 1946, for loading on vessels at that point. If plaintiff performed the services for which it seeks compensation, such services were obviously performed on or before May 13 and 16, 1946, since the plaintiff rendered bills to the Treasury Department and demanded payments on those dates.

The petition herein was filed more than six years after either of those dates. It seems clear, therefore, that the claim is barred by the statute of limitations of six years. As early as the decision in Battelle & Evans v. United States, 7 Ct.Cl. 297, this court held:

"The question raised on those pleadings is, whether the statute began to run when the price for the deliveries, &c., became payable, or when the claims were disallowed at the Department.

"We think the claim '*first accrued,*' in the language and meaning of the statute, when the right to demand the price for the property sold first vested in the petitioner. * * *

"The purpose of a statute of limitation requires that it should not leave the time at which it is to attach at the control of the creditor."

This rule has been consistently followed by the court and was restated in L. E. Myers Company, Inc., v. United States, 64 F.Supp. 148, 149, 105 Ct.Cl. 459, 478, in which the court said:

"The claim first accrues when it can be definitely ascertained and set up, when all that is required of him by the terms of the contract have been fulfilled by the contractor, enabling him to meet any plea of neglect to perform.

"Filing of the claim with the administrative office * * * did not come within the terms of the contract and did not bring forward the date of accrual of the claim."

The plaintiff's petition must be dismissed, and it is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.