**INTERNATIONAL POTATO CORPORATION**
v.
**UNITED STATES.**
No. 482–56.

United States Court of Claims.
May 7, 1958.

Edward M. Frankel, Huntington, N. Y., for plaintiff.

Gerson B. Kramer, Silver Spring, Md., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

The basis for defendant's motion is that plaintiff's action is barred by the general statute of limitations governing the filing of claims in this court.[1] The material facts are not in dispute.

Between February 21, 1950, and March 7, 1950, plaintiff entered into ten contracts with the Army whereby plaintiff agreed to sell and deliver a specified quantity of potatoes, in bags, to various military installations.

Plaintiff completed all its deliveries under these contracts by March 21, 1950, and each of its shipments was accepted by the proper officer at the military installations.

On April 4, 1950, plaintiff sent a telegram to the Department of the Army inquiring as to the reason for the delay in making payment for the potatoes. On April 20, 1950, plaintiff sent a letter to the Army again inquiring as to the reason for the delay in payment and demanding payment "as soon as possible." Apparently, plaintiff never received any explanation of the delay as a result of these inquiries.

On June 15, 1952, Pelber Products Company, Inc., and eight individuals or corporations to which it had resold potatoes (of which plaintiff was one) were indicted for violation of 15 U.S.C.A. § 714m and 18 U.S.C. § 371. In this action, the Government claimed that some of the potatoes that plaintiff had delivered in 1950 had been sold to Pelber by the Government at a low price for export only[2] and not for resale within the United States and that Pelber, plaintiff and others had conspired to defraud the Government by reselling the potatoes within the United States at the higher price created by the support price level. Plaintiff pleaded not guilty to these charges. The indictment is still pending, but no trial has been had.

On March 25, 1954, plaintiff's attorney sent a letter to the Army reviewing the above facts and requesting that the Army go over the matter with the object of reaching a decision as to payment. In response to this letter, the Army, on March 30, 1954, addressed the following to plaintiff's attorney:

"Reference is made to your letter, dated 25 March 1954, addressed to

---

1. 28 U.S.C. § 2501 provides that "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed, * * * within six years after such claim first accrues."

2. By the terms of the price support provision of the Agricultural Act of 1948 (62 Stat. 1247, 1255), the Commodity Credit Corporation was forbidden to sell potatoes below the price support formula, except for export.

this office, concerning certain funds which are being withheld from your client, International Potato Corporation.

"As you were advised at the time of your recent conversation with First Lieutenant Edwin I. Colodny of this office, certain matters involving your client are under consideration by the Department of Justice. Accordingly, until such time as the Civil Division of that Department informs this office that said matters have been appropriately disposed of, this Department does not contemplate any action with respect to payments under the purchase orders mentioned in your letter."

Defendant has never paid for any of the potatoes received in March 1950. Plaintiff's petition, seeking payment therefor, was filed in this court on November 9, 1956.

It is defendant's position that plaintiff's cause of action first accrued when it completed delivery under the contracts on March 21, 1950, or when it made its demands for payment in April 1950, and that, therefore, plaintiff's claim, in either case, was barred in November 1956 when the petition was filed. Plaintiff maintains that its claim did not first accrue until sometime after November 1950 and that, even if it did accrue previously, defendant's letter of March 30, 1954, was an acknowledgment of indebtedness which tolled the statute of limitations. We agree with defendant that plaintiff's claim is barred.

■■ We have consistently held that a contractor's claim under a contract for the sale and delivery of goods first accrues "when all that is required of him by the terms of the contract has been fulfilled by the contractor, enabling him to meet any plea of neglect to perform." L. E. Myers Co., Inc., v. United States, 1956, 64 F.Supp. 148, 149, 105 Ct.Cl. 459,

478. See also Battelle v. United States, 1871, 7 Ct.Cl. 297; State Tent & Canvas Co., Inc., v. United States, 1955, 130 F.Supp. 384, 131 Ct.Cl. 215. And, unless it is obligatory under the law or the terms of the contract that a claim be first filed with a governmental agency, the filing of the claim with such an agency cannot postpone the operation of the statute of limitations in this court. Battelle, Inc. v. United States, supra. "To hold otherwise would leave it within the power of the claimant to postpone or interrupt the running of the statute." L. E. Myers Co., Inc., v. United States, supra, 64 F.Supp. at page 149, 105 Ct.Cl. at page 478.

Plaintiff contends that this general rule cannot apply to the accrual of its claim since defendant's nonpayment was the result of a dispute as to a question of fact which, under the contract terms, had to be decided by the contracting officer;[3] that, therefore, plaintiff's claim did not first accrue until the contracting officer made a finding as to the dispute or until a reasonable time after he failed to do so.

■ The authority of a contracting officer to render decisions under contract provisions such as the one at bar is limited strictly to factual questions arising from the contract itself, Pfotzer v. United States, 1948, 77 F.Supp. 390, 111 Ct.Cl. 184, and does not extend to questions of law. Ruff v. United States, 1942, 96 Ct.Cl. 148; Plato v. United States, 1938, 86 Ct.Cl. 665.

■ The only "dispute" between the parties in the instant case was whether or not plaintiff had been guilty of fraud in the performance of its contract on facts arising wholly outside the contract itself. "The Contracting Officer * * has power to administratively settle disputes of fact arising in the execution of a contract, not crimes in the nature of frauds of fact resulting from its execution." United States v. United States

3. The contract contained the usual provision that " * * * any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, * * *."

Cartridge Co., D.C.E.D.Mo.1948, 78 F. Supp. 81, 83–84.

It follows that in the instant case the contracting officer had neither authority nor duty to render a decision with respect to the controversy between plaintiff and defendant even had he been requested to do so, and that, therefore, his failure in this regard could not affect the accrual of plaintiff's claim or its right to prosecute such claim in this court. Plato v. United States, supra; Phoenix Bridge Co. v. United States, 1937, 85 Ct.Cl. 603.

█ We, therefore, hold that plaintiff's claim "first accrued" within the meaning of 28 U.S.C. § 2501 on March 21, 1950, when plaintiff had completed all that was required of it under the contract.

Plaintiff maintains, however, that even if its claim did first accrue in March 1950, defendant's letter of March 30, 1954, constituted an acknowledgment of indebtedness which tolled the statute of limitations.

There may be some doubt as to the authority of the agency which wrote this letter to make such an acknowledgment in view of the fact that the case, as the letter indicates, had been placed in the hands of the Department of Justice.[4] But, in any case, we are satisfied that the letter was not such an acknowledgment of indebtedness that could operate to toll the statute of limitations.

█ The Supreme Court has held "* * * that an acknowledgment cannot be regarded as an admission of indebtedness where the accompanying circumstances are such as to repel that inference, or to leave it in doubt whether the party intended to prolong the time of legal limitation." City of Fort Scott v. Hickman, 1884, 5 S.Ct. 56, 63, 112 U.S. 150, 163, 28 L.Ed. 636. This is representative of the general rule that "The force of an acknowledgment [sufficient to toll the statute of limitations] depends in most states upon the inference to be drawn from it of an intention to pay. *If there is anything in the surrounding circumstances, even though not in the words of the acknowledgment,* tending to negative such an inference or to leave it in doubt, the indebtedness will not be revived." Williston on Contracts, 3d Ed., § 170, p. 677. [Emphasis supplied.]

█ We think that the Army's letter of March 30, 1954, fairly read, amounted to no more than a polite statement to the plaintiff that the matter of payment was entirely out of its hands and that the Army, therefore, could not pay the claim whether it wished to or not.[5] It cannot be construed, under the circumstances which plaintiff knew existed and which were referred to by the letter, as having either expressly or impliedly promised that payment would ever be made: that depended solely upon the Department of Justice and the outcome of the criminal proceedings against the plaintiff. The letter could not, therefore, constitute an acknowledgment of indebtedness cufficient to toll the statute even if we assume the Army had authority to make such an acknowledgment.

We regret that plaintiff must be precluded from presenting what may be a just claim merely because it has come before us too late. But limitations on actions are universally enacted and serve to promote rather than prevent justice. They do not unreasonably burden a plaintiff.

We have examined all of plaintiff's contentions and can find no basis upon which

4. See § 5 of Executive Order 6166, June 10, 1933, 5 U.S.C.A. §§ 124–132 note which provides:
   "As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice."

5. Cf. Restatement of Contracts, § 86, Illus. 7, "A owes B $500, and writes B, 'I admit that I owe you $500, but I am unable to pay it.' A's letter imposes no duty upon him."

we could allow this action to be maintained. Accordingly, defendant's motion is granted and plaintiff's petition is dismissed.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.