## UNITED STATES of America, Plaintiff-Appellant,

v.

## MEDICO INDUSTRIES, INC., Defendant-Appellee.

### No. 81–2354.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1982.

Decided Aug. 18, 1982.

Frank M. Rapoport, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Glade F. Flake, Chevy Chase, Md., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and GRANT,[*] Senior District Judge.

GRANT, Senior District Judge.

This is an appeal from a dismissal of a complaint seeking declaratory relief filed by the United States against defendant-appellee Medico Industries, Inc. ("Medico"). It alleges that an agent and representative of Medico violated the conflict of interest prohibition of 18 U.S.C. § 207[1] and, based

---

[*] Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

[1.] Section 207(a) of Title 18, at the time of the events underlying this lawsuit, provided:

> Whoever, having been an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or of the District of Columbia, including a special Government employee, after his employment has ceased, knowingly acts as agent or attorney for any-

upon that reason, seeks to have a contract between the Government and Medico declared void and unenforceable. The district court dismissed the case, deferring consideration of the issue to the Armed Services Board of Contract Appeals ("Board"). The issue on this appeal is whether that Board has the authority to decide alleged violations of 18 U.S.C. § 207. We hold that it does not and, accordingly, reverse.

## I.

On May 31, 1973, a contract for the manufacture and delivery of 60 mm. projectiles was awarded to Medico by the United States Army. At that time and through August, 1973, Edward F. Hill was employed by the Government as the contracting officer for this contract. On January 23, 1974, another company with a contract for the production of the same type of projectiles was terminated for default by the Government. Medico submitted a proposal for the terminated quantity and was awarded a portion of the outstanding production. Rather than executing a new and separate

contract, Medico and the Government, on January 31, 1974, simply modified their earlier agreement. Up to and including August 1, 1974, no disputes arose between the Government and Medico regarding the payment of monies for additionally incurred costs. A modification acknowledging a full settlement of all claims up to that date was executed on August 26, 1974. However, on November 25, 1974, Medico filed with the Government a claim for an equitable adjustment for additional costs incurred with relation to the additional production after August 1, 1974. Edward Hill, the earlier contracting officer on the Army contract, allegedly acted as an agent and representative of Medico in the preparation and presentation of the claim. The claim was denied by the contracting officer on June 10, 1977,[2] and Medico then appealed to the Board pursuant to the Disputes Clause of the contract.[3]

At the Government's request, the proceedings were suspended until August 2, 1979. Thereafter, by letter dated February

one other than the United States in connection with any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter involving a specific party or parties in which the United States is a party or has a direct and substantial interest and in which he participated personally and substantially as an officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, while so employed, or

\* \* \* \* \* \*

Shall be fined not more than $5,000, or imprisoned not more than one year, or both.

2. No reason is given by either the Government or Medico for the lengthy delay between Medico's equitable adjustment claim and the denial by the contracting officer.

3. The parties have not supplied the court with a copy of the original contract or the modification. In its brief, the Government provides an example of a standard "Disputes" Clause which we presume applies to this case.

   (a) Except as otherwise provided in this contract, any dispute concering [sic] a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or

otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In conenction [sic] with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

   (b) This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: *provided*, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

25, 1980, the contracting officer informed Medico that:

> Your contract with the Department of the Army DAAA09–73–0259, is tainted with violations of the United States Code (18 U.S.C. 207(a)) on the part of Mr. Edward F. Hill. I am exercising my discretion and cancelling this contract effective this date. This cancellation extinguishes all claims, rights and demands of whatsoever nature which Medico Industries, Inc., may have had against the United States under the aforementioned contract.[4]

█ The Government then proceeded to seek dismissal of the appeal pending before the Board, contending that the cancellation of the contract terminated the Board's jurisdiction over the dispute. It argued that because the contract was declared void, there was nothing for the Board to decide. On May 22, 1980, the Board denied the motion, concluding that the contracting officer lacked the authority to cancel the contract. As a result, his action "was nugatory and of no effect upon [the Board's] jurisdiction to hear the subject appeal." Opinion of Administrative Law Judge Axelman at 9. The reasoning in support of this decision is as follows:

> The foregoing regulations grant no responsibility or authority to a contracting officer concerning violations of the conflict of interest statutes of the United States other than to initiate a report where he has reason to suspect such a violation. Neither those regulations nor any others authorize him to make determinations and take dispositive action with regard to such violations.

> In *Aywon Wire & Metal Corporation*, ASBCA No. 4966, 1963 BCA § 3912, one of the defenses raised by the Government was that illegal conduct by appellant, in violation of the False Claims Act (31 U.S.C. § 231 *et seq.*), tainted the claim. In disallowing the said defense, we said:

Because of the nature of the statutes concerned; for the reasons set forth in HARRY LEV, ASBCA No. 2869 supra; *and because of the assignments within the Department of the Army with respect to responsibility for false claims, fraud, and other criminal conduct, (Part 6, Section 1, APP)*; the Board concludes that it is not within its jurisdiction to find that all or a portion of appellant's claim or of the testimony or documentary evidence presented in support thereof is, in this case, false or fraudulent and to deny or forfeit the claim, in whole or in part, upon the basis of such a finding. Cf., Atlas Can Corp., ASBCA No. 3381, 6 June 1960, 60–1 BCA par. 2651, pages 13,165 and 13,177–8. [Emphasis inserted]

The quoted language pertaining to our jurisdiction to make findings as to criminal conduct and to deny or forfeit a claim on the basis thereof is equally applicable to the jurisdiction or right of the contracting officer to make criminal findings and cancel the contract in consequence thereof in the matter before us. *Just as we had neither authority nor duty to render a decision as to an allegation of fraud, the contracting officer in this appeal had no authority or duty to render a decision concerning violations of 18 U.S.C. § 207(a).*

As the Court of Claims stated in *International Potato Corp. v. United States*, 142 Ct.Cl. 604, 607, 161 F.Supp. 602, 604 (1958):

> The authority of a contracting officer to render decisions under contract provisions such as the one at bar is limited strictly to factual questions arising from the contract itself, *Pfotzer v. United States*, [77 F.Supp. 390], 111 C.Cls. 184 (1948), and does not extend to questions of law. *Ruff v. United States*, 96 C.Cls. 148 (1942); *Plato v. United States*, 86 C.Cls. 665 (1938).

> \*    \*    \*    \*    \*    \*

> "The contracting Officer ... has power to administratively settle dis-

---

**4.** To the knowledge of the court, no criminal proceedings have been instituted against Edward Hill.

putes of fact arising in the execution of a contract, not crimes in the nature of frauds of fact resulting from its execution." *United States v. United States Cartridge Co.,* 78 F.Supp. 81, 83–84 (E.D.Mo.1948).

*Id.* at 8–9 (footnote omitted) (emphasis supplied).

After its motion for reconsideration was denied by the Board, the Government filed this action in federal district court on December 2, 1980. It sought a declaratory judgment that Hill's actions constituted an unlawful conflict of interest under 18 U.S.C. § 207(a) which rendered the entire contract void and unenforceable. The administrative proceedings were stayed pending a resolution of the federal court action. Medico moved for the dismissal of the complaint on January 12, 1981, on the ground that the matter was presently pending before the Board. The Government in turn argued that the Board had no jurisdiction to adjudicate the conflict of interest question. On June 15, 1981, the district court, after speaking with ALJ Axelman, "decided to abstain from resolving the issue in the action for declaratory judgment filed by the government in this court," Mem.Op. at 2, and granted Medico's motion to dismiss. The court reasoned:

> Although the question of the ASBCA's jurisdiction to adjudicate the issue is apparently one of just [sic] impression, this court is satisfied that the ASBCA does have jurisdiction.
>
> The issue is whether the government contract now being considered by the ASBCA is void because the conduct of one of the defendant's agents was a violation of 18 U.S.C. § 207. If the contract is void, the ASBCA has no jurisdiction to resolve the contract dispute. In determining its own jurisdiction, the ASBCA can reach and decide the issue of whether the contract is void. The fact that this determination ultimately may require consideration of the criminality of the agent's conduct strikes this court as irrelevant. Even though the ASBCA ordinarily does not consider criminal statutes and allegations of criminal conduct, here the matter of alleged criminal conduct goes to the issue of the jurisdiction of the ASBCA. Thus presented, the ASBCA, like any deliberative or judicial body, necessarily would have to consider the issue. Nothing in the ASBCA opinion presented to this court for review forecloses ASBCA's consideration of the issue as a defense to the claim now before the ASBCA. The issue can be presented to ASBCA by the government.

Mem.Op. at 2 (footnote omitted).

A pre-hearing conference was held before ALJ Axelman on July 14, 1981, at which time the Government asserted as a defense that the contract was void as a result of Hill's conflict of interest. The hearing on the conflict of interest issue was scheduled for October of 1981, and, in the event that the Board rejected the Government's position, the hearing on the merits of the appeal was scheduled for March 15, 1982. The October hearing was subsequently cancelled and a hearing of the appeal by the Board, including all the Government's affirmative defenses, is now apparently being rescheduled. The Government here appeals from the district court's refusal to reach the merits of its complaint.

## II.

The pivotal issue in this case is whether the Board has jurisdiction to decide whether the actions of Edward Hill constituted a conflict of interest under 18 U.S.C. § 207(a). We do not decide whether Hill's conduct constituted an unlawful conflict of interest nor if it did, whether the contract can and should be entirely cancelled. Also, the merit of Medico's claim for an equitable adjustment is irrelevant to this appeal. The sole issue before us is whether the Board is a proper tribunal for deciding the legality of Hill's conduct under the federal statute.

Under the prevailing law at the time of the events in question, the jurisdiction of the Board was defined by the "disputes

clause" of the contract.[5] As Medico itself admits, the Board had only the authority and power to adjudicate disputes "arising under" the contract. *See Crown Coat Front Co., Inc. v. United States*, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Bethlehem Steel Corp. v. Grace Line, Inc.*, 416 F.2d 1096 (D.C.Cir. 1969). The Government's argument, in the simplest of terms, is that the conflict of interest question is not one which "arises under" the contract.[6]

We begin our analysis by examining the position of the Board in this very case. In its May 22, 1980 written decision, the Board unequivocally states that it is without "jurisdiction to make findings as to criminal conduct." This seems to be exactly what the district court later instructed the Board to do. During oral argument, Medico argued that the Board itself acknowledged that it could and would decide the conflict of interest issue. It directed our attention to the Board's Order of November 10, 1981, wherein the Board permitted the Government the opportunity to "present evidence concerning any and all affirmative defenses which it desires the Board to consider." What Medico overlooks is the fact that this Order was issued by the Board subsequent to the decision of the district court which had held that the Board could and should decide the issue. The Board was merely complying with the instructions of the district court. Thus, the Board has never expressly or independently concluded that it possessed jurisdiction to decide the conflict of interest issue. Indeed, the only opinion it expressed in this case was just the opposite. Moreover, earlier in these proceed-

ings, after the Government filed its motion to dismiss before the Board, Medico argued that the Board "is not empowered to take on the task of criminal law enforcement." It is strange that Medico would adopt one position before the Board and an opposite position before the district court.

As stated earlier, the Board's jurisdiction is founded upon the "arising under" standard. Before it can address the merits of a dispute, the Board must initially determine whether the dispute and the questions underlying it "arise under" the contract. This general principle was explained in this manner by the Court of Appeals for the Ninth Circuit in *United States v. Reisman*, 611 F.2d 325, 328 (9th Cir. 1980):

> The fundamental principle that governs the disposition of this case was stated in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 404, 86 S.Ct. 1545, 1551, 16 L.Ed.2d 642 (1966). It is that "[t]he power of the administrative tribunal to make final and conclusive findings on factual issues rests on the contract . . ." That is, whether the government is entitled to bring this suit depends on the proper interpretation of the contract. If the contract, properly interpreted, requires the government to resolve its damage claim under the Disputes Clause, then the district court's dismissal was proper. However, if no such requirement exists, then we must reverse.

More specific principles were articulated by that same court of appeals in *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 230–31 (9th Cir. 1979):

> It is important to note, however, that not all contractual disputes are subject to the exhaustion requirement; exhaustion

---

5. Both parties admit that this case is governed by the law which prevailed prior to enactment of the Contract Disputes Act of 1978, Pub.L.No. 95–563, 92 Stat. 2383, 41 U.S.C. § 601 *et seq.* Thus, our decision is limited to that extent.

6. The Government cites and relies heavily upon the Court of Claims decision in *K & R Engineering Co., Inc. v. United States*, 616 F.2d 469 (Ct.Cl.1980), wherein the court held that the Government has the right to cancel and annul contracts which have been tainted by violations

of 18 U.S.C. § 208(a). *See also United States v. A and C Investments, Inc.*, 513 F.Supp. 589 (N.D.Ill.1981) (violations of False Claims Act). Medico does not dispute that the alleged conflict of interest issue in this case can be decided by the Court of Claims or by a federal district court. It argues that the Board also possesses this authority and the district court did not err in allowing the Board to be the first tribunal to wrestle with the issue.

is required only for disputes "arising under the contract." *Utah Construction Co.*, 384 U.S. at 407, 86 S.Ct. 1545. The test to be employed in distinguishing claims within the dispute clause procedure from those outside that procedure "is whether the controversy is fully redressable under a provision of the contract other than the disputes clause itself." *Bethlehem Steel Corp. v. Grace Line, Inc.*, 135 U.S.App.D.C. 81, 86, 416 F.2d 1096, 1101 (1969). In other words, a fact-dispute "arises under the contract" only when the disputed fact is capable of complete resolution by a procedure specified in the contract:

> In consequence, claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while claims for breach of contract—those not adjustable in that fashion—may be litigated in a court of competent jurisdiction without previous resort to that procedure.

*Id.*

■ Applying these principles to the record in this case, we conclude that the conflict of interest question is not one which "arises under" the contract. The terms and conditions of the contract are essentially irrelevant to resolving the propriety of Hill's conduct. The Board is empowered only to interpret and apply the contract. On the conflict of interest issue, interpretation and application are unnecessary. Thus, in the words of the court in *Bethlehem Steel*, the conflict of issue controversy is not "fully redressable under a provision of the contract other than the disputes clause itself." 416 F.2d at 1101 (footnote omitted).

A better understanding can be gained by comparing Medico's equitable adjustment claim with the Government's conflict of interest claim. The equitable adjustment claim rests on provisions of the contract separate from the Disputes Clause. It can be redressed by examining, interpreting and applying the specific language of the contract dealing with what was to be produced, when it was to be produced and at what price. On the other hand, the contract offers no assistance in resolving the conflict of interest question. No contractual provision defines what constitutes an unlawful conflict of interest or, more importantly, what action is to be taken if it is so found. The information relevant for resolving the conflict of interest question (*i.e.*, Hill's responsibilities and actions while serving as the Army's contracting officer and his actions with respect to Medico's claim for an equitable adjustment) arise not under, but entirely outside the contract. The authority of the Board is limited to interpreting and applying the provisions of the contract. It follows, therefore, that the Board is without authority to decide conflict of interest issues.

The district court reasoned that "[i]n determining its own jurisdiction, the [Board] can reach and decide the issue of whether the contract is void." Mem.Op. at 2. As a general rule, we would agree with the district court that the Board should be given an initial opportunity to decide whether it has jurisdiction in a case. In other words, it should have the opportunity to decide whether the dispute "arises under" the contract. But this principle is not applicable here. There is no dispute that the Board possesses the authority to address Medico's equitable adjustment claim. The real issue is whether there exists any contract at all which can be equitably adjusted. That issue centers upon the alleged unlawful conflict of interest. For the reasons just discussed, that issue clearly is not one which "arises under" the contract. Only in cases where the question determining jurisdiction can arguably be said to "arise under" the contract can the general principle be properly applied. Such an argument cannot be made here. The nature of the jurisdictional question distinguishes this case from the decision in *Bethlehem Steel Corp.*, 416 F.Supp. at 1105–09. There, the dispute arguably "arose under" the contract and it was in the interests of the district court to have an "administrative ventilation," *id.* at 1107, of the underlying factual issues. The dispute in this case does not even arguably "arise under" the contract.

236

In this same regard, Medico argues in general terms that it is in the interest of all parties, including the Board and the courts, for the district court to refrain from addressing this issue and leaving it with the Board. Underlying this argument is Medico's belief that judicial and administrative economy and efficiency would be enhanced by such action.[7] While not convinced that the dispute resolution process would be enhanced or improved by permitting the Board to decide the conflict of issue question, we do think it is irrelevant in this case. The Board is a tribunal of limited authority and empowered to decide only very specific types of cases. It has no more power than that. Decisions regarding issues which are beyond its power are null and void. *Johnson Controls, Inc. v. United States*, 671 F.2d 1312, 1318 (Ct.Cl.1982) ("Without jurisdiction at the Board, of course, the hearings and the findings of fact and law are essentially a nullity or gratuity and would possibly require further *de novo* proceedings in this court. This would be a waste of judicial time and energy in this case, not to mention the waste of the parties' resources.") Thus, however wise it may be to allow the Board the opportunity to decide the issue in the first instance, it cannot be permitted because the issue is beyond the scope of its power and authority. The Board's expertise in resolving contractual disputes is not implicated by the conflict of interest issue and the Board's authority is limited to those disputes where its expertise is implicated.

For these reasons, we conclude that the Board is without authority to decide whether Hill violated § 207 and that the district court's dismissal of the Government's complaint was therefore in error.

REVERSED and REMANDED.

---

7. Medico frames this argument in terms of exhaustion of administrative remedies and the discretionary nature of declaratory relief. Exhaustion is required, however, only where the administrative tribunal has the authority to decide the particular question, *see Reisman, supra*, 611 F.2d at 329, and an error of law, which is the case here, is "a ground for reversing what would ordinarily be a discretionary ruling." *Chrapliwy v. Uniroyal*, 670 F.2d 760, 765 (7th Cir. 1982) (footnote omitted), *petition for cert. filed*, 50 U.S.L.W. 3949 (U.S. May 19, 1982) (No. 81–2135).