Rene E. LINS

v.

The UNITED STATES.

No. 594–81C.

United States Court of Claims.

Sept. 8, 1982.

Certiorari Denied Jan. 17, 1983.
See 103 S.Ct. 788.

Rene E. Lins, pro se.

Charles L. Schlumberger, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KASHIWA and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDG-
MENT AND PLAINTIFF'S CROSS-MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS

FRIEDMAN, Chief Judge:

This is a suit to recover on a $1,000,000 United States Treasury Bill. We hold that the statute of limitations bars the suit.

I.

The Treasury Bill was a bearer bill redeemable on July 30, 1974. It was one of a number of securities which disappeared from the vaults of Chase Manhattan Bank ("Chase") in New York during November 1973. Chase notified the Treasury Department, which issued warning notices about the bills and also issued replacements to Chase. In return for the replacements, Chase had to acquire indemnification coverage for the United States in case the Treasury had to redeem both the original and replacement bills. 31 U.S.C. § 738a(b) (1976); 31 C.F.R. §§ 306.110, 309.12(a) (1981).

The plaintiff, appearing pro se, is a Swiss banker who acquired possession of the bill in November or December 1973 in Switzerland. In December, the plaintiff checked with the Swiss office of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") to see if the bill was valid. Merrill Lynch gave only a "neutral" answer, saying it had to check with its Protection Service in New York. In January 1974, Merrill Lynch told the plaintiff the bill was stolen.

In July 1974, when the bill became due, the plaintiff was in Thailand, fighting extradition proceedings to Switzerland. Through various agents, the last of which was Irving Trust Company, the plaintiff eventually presented the bill to the Federal

Reserve Bank in New York on September 5, 1974. United States securities issued for a term of one year or less are overdue if presented a month or more after maturity. 31 C.F.R. § 306.25(b)(1) (1981). Section 306.25(b) provides that: "If a bearer security ... is presented and surrendered for redemption after it has become overdue, the Secretary of the Treasury will ordinarily require satisfactory proof of ownership. (Form PD 1071 may be used)." Accordingly, the bank refused to redeem the bill until Form PD 1071 was completed. Irving Trust took the bill and the form back to the office, intending to complete the form and present the bill again shortly. The next day, however, the Federal Bureau of Investigation, which had discovered the bill was stolen, subpoenaed it from Irving Trust.

A long investigation followed to determine how the bill had gotten to Switzerland and whether the plaintiff had received stolen goods. In 1978, the Swiss prosecutor decided there was not enough evidence to prosecute the plaintiff. In February 1979, the plaintiff finally presented his Form PD 1071, known also as a certificate of ownership. This form requires proof that the bearer acquired the bill for value, before the maturity date, and without notice of any defect in title. The Department requires this proof to avoid the possibility of double liability, because insurers might not indemnify it if the United States redeems an overdue bond from an illegitimate bearer.

In February 1980, the Treasury refused again to pay the plaintiff. It said that the plaintiff's certificate of ownership showed he acquired the bill before maturity, but that "it does not show firmly and unequivocally that you purchased the bill in good faith, without any notice of defect in title or that you paid value for the bill." Both before and after the plaintiff presented his certificate of ownership, the Treasury indicated that a valid court decree establishing the plaintiff's ownership would be accepted in lieu of a proper certificate of ownership.

In February 1981, the plaintiff sued the Treasury Department in the United States District Court for the District of Columbia for a declaratory judgment that he owned the bill. The Treasury impleaded the indemnitors. In September, the district court transferred the case to this court under 28 U.S.C. § 1406(c) (1976), because the plaintiff was seeking money damages in an amount beyond the court's jurisdiction. *Id.* § 1346(a)(2) (Supp. IV 1980).

In his petition in this court, the plaintiff seeks the $1,000,000 face value of the bill, interest from September 5, 1974, and consequential damages of up to $10,000,000. The government has moved for summary judgment. The plaintiff has cross-moved for partial judgment on the pleadings or, alternatively, for partial summary judgment for $1,000,000. We grant the government's motion.

## II.

■ The statute of limitations provides that: "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1976). The statute is jurisdictional. *Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *Nager Electric Co. v. United States*, 177 Ct.Cl. 234, 249, 368 F.2d 847, 857 (1966).

■ A claim first accrues "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager*, 177 Ct.Cl. at 240, 368 F.2d at 851 (footnote omitted). Therefore, when the plaintiff has done all he must do to establish his entitlement to payment, e.g., perform on his contract, the claim accrues. *Id.* at 240–41, 368 F.2d at 851–52; *International Potato Corp. v. United States*, 142 Ct.Cl. 604, 161 F.Supp. 602 (1958). If disputes are subject to mandatory administrative proceedings, then the claim does not accrue until their conclusion. *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511, 87 S.Ct. 1177, 1181, 18 L.Ed.2d 256 (1967); *Nager*, 177 Ct.Cl. at 242–44, 368 F.2d at 853; *Friedman v. United States*, 159

Ct.Cl. 1, 8–9, 310 F.2d 381, 385–86 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Pursuit of permissive administrative remedies, however, does not toll the statute of limitations. *Soriano*, 352 U.S. at 274–75, 77 S.Ct. at 272; *Clyde v. United States*, 80 U.S. (13 Wall.) 38, 20 L.Ed. 479 (1871); *Camacho v. United States*, 204 Ct.Cl. 248, 259, 494 F.2d 1363, 1369 (1974); *Friedman*, 159 Ct.Cl. at 11–12, 310 F.2d at 388.

### III.

A. Plaintiff's claim accrued on September 5, 1974, when the bill was presented to the Federal Reserve Bank.

A contract claim accrues "when the contractor could ordinarily demand his money and bring his suit if payment was not made." *Nager*, 177 Ct.Cl. at 240–41, 368 F.2d at 852. It is the completion of the contractor's work and the resulting entitlement to payment, not the failure to pay which creates the claim. In personnel cases, the claim accrues when the employee is entitled to payment, not when the government fails to pay him. *Sauer v. United States*, 173 Ct.Cl. 642, 354 F.2d 302 (1965); *Friedman*, 159 Ct.Cl. at 20–24, 310 F.2d at 393–95. Similarly, in the present case, the critical question is when the plaintiff first had an enforceable right to payment.

The bill provided that it would be paid on presentation to the Treasurer of the United States or to any Federal Reserve Bank. The general regulation governing United States securities provides for payment upon presentation and surrender in the regular course of business. 31 C.F.R. § 306.25(a) (1981).

The plaintiff became entitled to redeem the bill on July 30, 1974, when the bill matured. The bill required the plaintiff to present it as a condition of payment, however, and the plaintiff was not entitled to payment until September 5, 1974, when Irving Trust presented the bill. *See United States v. Taylor*, 104 U.S. 216, 221–22, 26 L.Ed. 721 (1881). On that date, however, the plaintiff had done everything he had to do to establish his right to payment. Therefore, his claim accrued on that date.

The plaintiff himself recognizes he was entitled to payment on September 5, 1974, since he seeks interest from that date. Interest is due when money owed is not paid. For the plaintiff to seek interest from September 5, 1974, he must contend that he was entitled to payment then. If he was entitled, he could have enforced the claim and the statute began to run.

B. The plaintiff makes six arguments to avoid this conclusion. We reject them all.

1. The plaintiff contends that because the bill was overdue, the regulations required him to present his certificate of ownership. 31 C.F.R. § 306.25(b). He says that he was not entitled to payment until he presented the form and hence that the claim did not accrue until the government refused to pay him after he filed the certificate.

There are situations when a plaintiff must demand payment from the government before the claim accrues. *E.g., Taylor*, 104 U.S. at 221–22; *B–W Construction Co. v. United States*, 100 Ct.Cl. 227, 235 (1943); *Austin Engineering Co. v. United States*, 88 Ct.Cl. 559, 562–63 (1939). In those circumstances, the demand is required either by statute or by contract. In this case, the demand for payment took the form of presentation of the bill. When, however, performance of a contract is complete and the exact amount due is known, even the presentation of the final voucher is not essential to the accrual of a claim. *Henry Products Co. v. United States*, 180 Ct.Cl. 928, 931–32, 932 n.2 (1967); *Pink v. United States*, 85 Ct.Cl. 121, 124–25 (1937), *cert. denied*, 303 U.S. 642, 58 S.Ct. 641, 82 L.Ed. 1102 (1938).

Presentation of the certificate of ownership for an overdue bill is not an element of accrual of the claim for payment of the bill under the statute of limitations. The requirement is merely an administrative procedure designed to protect the Treasury from double liability. The regulation re-

quiring the certificate so indicates. It states: "[T]he Secretary . . . will ordinarily require satisfactory proof of ownership." 31 C.F.R. § 306.25(b). It also authorizes the Secretary to waive the requirement. *Id.* § 306.126.

■ Throughout the plaintiff's protracted attempts to obtain payment of the bill, the Treasury took the position that instead of supplying the certificate, the plaintiff could file suit and thereby establish his right to payment. Filing the certificate pursuant to the regulations was a permissive administrative remedy which did not affect the creation of the plaintiff's rights. "In this case no more than in any other would the mere fact that the Government could conceivably refuse to pay the sum due . . . delay the running of limitations once the plaintiff was in a position to ask for its money." *Henry Products*, 180 Ct.Cl. at 932.

To hold otherwise would be to say that the plaintiff could delay the running of the statute, after his rights had matured, by postponing his administrative claim. In this case, the delay was four-and-a-half years from when the bond matured. "The purpose of a statute of limitation requires that it should not leave the time at which it is to attach at the control of the creditor." *Battelle v. United States*, 7 Ct.Cl. 297, 301 (1871).

■ 2. The plaintiff argues that his right to payment did not mature until the Swiss prosecutor dropped the criminal investigation of him. The prosecutor's action did nothing to establish the plaintiff's rights under the bill and did not affect those rights.

■ 3. The plaintiff says that section 306.25 of the regulations requires a bill to be presented and surrendered before payment is due. He contends that Irving Trust never surrendered the bill because it took the bill back to its office. Irving Trust's presentation for redemption, however, necessarily was an offer to surrender the bill upon payment. The Federal Reserve Bank refused to accept the bill because it refused to redeem it. The plaintiff had done every-

thing he could and the fact that he retained the bill did not prevent his claim from accruing.

■ 4. The plaintiff argues next that the criminal investigation tolled the statute of limitations. He cites three cases for this proposition. Two, *First Beverages, Inc. v. Royal Crown Cola Co.*, 612 F.2d 1164 (9th Cir.), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980), and *Wager v. Pro*, 195 U.S.App.D.C. 423, 603 F.2d 1005 (1979), have nothing to do with statutes of limitations.

The third, *Leigh v. McGuire*, 613 F.2d 380 (2d Cir. 1979), *vacated*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980), *dismissed*, 507 F.Supp. 458 (S.D.N.Y.1981), was an action under the Civil Rights Act, 42 U.S.C. § 1983 (Supp. IV 1980), in which the parties had already litigated the same issues in state civil and criminal proceedings. The court of appeals held that, under the special circumstances, the interests of federalism required the statute of limitations to be tolled during the state proceedings, particularly the civil proceedings. The Supreme Court vacated the decision for reconsideration in light of *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), in which the Court held that when a federal court borrows a state statute of limitations for section 1983 actions, it must borrow also the state tolling rules unless they are inconsistent with the purposes of section 1983. The Second Circuit remanded the case to the district court, which held that the section 1983 action was not tolled. The case is thus of no help to the plaintiff.

In *International Potato*, even a pending indictment of the plaintiff did not toll the statute of limitations. Although the criminal investigation might have prevented the plaintiff from obtaining a judgment, it did not prevent him from filing suit. It did not toll the statute of limitations.

■ 5. The plaintiff argues that the government fraudulently concealed relevant facts from him because it did not tell him of the indemnity bond until June 1981.

The existence of the bond, however, had no bearing on the plaintiff's rights. It was designed to protect the government, not the plaintiff, and his knowledge of it is irrelevant.

6. Finally, the plaintiff claims the government acknowledged the debt on February 26, 1980, when it wrote him that his certificate of ownership "clearly establishes that you acquired $1,000,000 Treasury Bill No. 130331B before maturity." An acknowledgment will start the limitations clock running again. The letter, however, was not an acknowledgment of indebtedness. It merely recognized that the plaintiff had acquired the bond before maturity. The very next sentence stated: "However, it does not show firmly and unequivocally that you purchased the bill in good faith, without any notice of defect in title or that you paid value for the bill."

The letter does not recognize the plaintiff's right to payment, but denies that right. There is, moreover, no promise, not even an implied promise, to pay the plaintiff. *See Elliott v. United States*, 134 Ct.Cl. 197, 198–99, 138 F.Supp. 873, 874–75 (1956).

C. The plaintiff's complaint in the district court was filed on February 25, 1981. That was almost six-and-a-half years after Irving Trust presented the bill. The suit is too late.

### CONCLUSION

The defendant's motion for summary judgment is granted, the plaintiff's motion is denied and the petition is dismissed.