**Richard E. HEIM, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 00–141C.**

United States Court of Federal Claims.

Aug. 10, 2001.

---

Mark J. Berkowitz, Fort Lauderdale, Florida, attorney for the plaintiff.

E. Michael Chiaparas, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., with whom were Todd M. Hughes, Assistant

Director and David M. Cohen, Director, attorneys for the defendant.

## OPINION

HORN, Judge.

## FINDINGS OF FACT

Plaintiff, Richard E. Heim, was commissioned as a Second Lieutenant in the United States Army Reserve (USAR) on June 2, 1972, and was assigned to the Quartermaster Corps. On June 6, 1975, he was promoted to First Lieutenant, followed by a subsequent promotion, on June 5, 1979, to Captain and assigned to the 3220th United States Army Garrison.[1] Major Philip W.J. Burns, as the rater, and Lieutenant Colonel (LTC) Terrance L. Rich, as the senior rater, issued two unfavorable Officer Evaluation Reports (OERs) to the plaintiff for the periods of December 4, 1979 through December 3, 1980 and December 4, 1980 through June 6, 1981, finding in both OERs that plaintiff lacked initiative and aggressiveness, and failed to complete assignments in a timely manner. Prior to plaintiff's unfavorable OERs, plaintiff alleges he had consistently been given "superior or outstanding" ratings.

On June 6, 1981, plaintiff signed 1AA Army Form 831–a request for reassignment and transfer to a non-pay billet in the USAR Control Group. In section 4, the box marked "voluntary" was checked, but in section 7, plaintiff wrote, "I am signing this form under duress, object to the judgment of my duty performance, and intend to appeal unfair action." On December 12, 1981, after signing 1AA Army Form 831, plaintiff was transferred from the 3220th United States Army Garrison, where he had been in a pay billet, to the USAR Control Group where he was unable to earn pay or retirement points.

Plaintiff first challenged this transfer on October 28, 1983 by applying to the Army Board for Correction of Military Records (ABCMR). In his application, plaintiff alleged that he had not signed the 1AA Army Form 831 voluntarily. Plaintiff contended that he had been coerced into signing the form while under duress from his senior officers, LTC Rich and Colonel (COL) James A. Thompson. On June 5, 1985, the ABCMR denied Mr. Heim's request for relief, stating,

1. The applicant has not established that any material error or injustice occurred in his case.

2. The evidence of record does not demonstrate the applicant's request for transfer to the USAR control group was the result of an unlawful command, or that the request was the product of duress.

3. The applicant's subjective belief that he was required to complete the 1AA Form 831 in question does not alter the voluntary nature of his request for transfer, when he had not, in fact, been ordered to complete the form.

4. The applicant's transfer to the USAR Control Group was proper.

The ABCMR found that plaintiff had "failed to submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice." On November 28, 1987 plaintiff was discharged from the military after being passed over twice for promotion.

On April 29, 1988, plaintiff filed an amended complaint in the United States Claims Court (Case No. 224–88C), requesting "pay he would have received in his reserve unit had he not been transferred, correction of his military records, and reappointment to his

---

1. Plaintiff's promotions were all within the Army Reserve. According to *Palmer v. United States,* an Army Reservist is:

    not in full-time active duty service.... Some Reserve units provide pay billets for their Reserve officers, others do not. A pay billet usually means that the officer is obligated to engage in some number of drills each year-some units drill one evening a week, some one or two weekends a month-as the particular service activity may require. *See* 10 U.S.C. § 270(a)(1) (1988) (recodified at 10 U.S.C.

§ 10147(a)(1) (1994)). In addition, Reservists in a pay billet typically perform a period of active duty for training each year, usually of two weeks duration. *See id.* Members in such pay billets are paid by the military only for drills actually attended, *see* 37 U.S.C. § 206(a)(1) (1994), and for active duty for training actually performed, *see* 37 U.S.C. § 204(a)(2) (1994).

*Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999). Plaintiff was in a pay billet prior to December 12, 1981.

former grade." *Heim v. United States*, 22 Cl.Ct. 341, 342 (1991), *aff'd*, 949 F.2d 403 (Fed.Cir.1991) (table). In Case No. 224–88C, plaintiff's first amended complaint included the following allegations:

7. On June 6, 1981, Plaintiff executed a U.S. Army 1AA Form 831 ... in which Plaintiff stated that he was signing the form under duress and at the request of his Commanding Officer.

8. That Plaintiff did not voluntarily request the above described reassignment, and that such reassignment was in violation of Army Regulation 140–10.

9. That as a result of the above described reassignment the Plaintiff was deprived of the pay and other benefits which would have accrued to him had he not been reassigned, including but not limited to pay for Army Reserve drill sessions and annual active duty.

10. That Plaintiff has a substantive right to damages, including but not limited to money damages and correction of his military records together with reappointment to his former grade and reinstatement as a commissioned officer in the United States Army Reserve in accordance with provisions of 10 U.S.C. § 1552.

In Case No. 224–88C, Hodges J., the court held that Mr. Heim had voluntarily signed the form despite his subjective belief that he had been forced to sign: "Plaintiff's subjective belief that he was under duress did not alter the voluntary nature of his request for transfer; i.e., he was not ordered to complete the form." *Id.* at 344. Finding a lack of duress, the trial court judge granted the government's motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(4) of the United States Claims Court. *Id.* The Judge

also stated that he did "not find that the Board's decision was arbitrary, capricious, unsupported by substantial evidence or contrary to law." *Id.* In 1991, plaintiff appealed the decision of the Claims Court to the United States Court of Appeals for the Federal Circuit, which affirmed the trial court's judgment. *See Heim v. United States*, 949 F.2d 403 (Fed.Cir.1991) (table).[2]

Just under thirteen years after plaintiff first applied to the ABCMR, on September 12, 1996, plaintiff submitted a petition to the ABCMR for reconsideration of the Board's original 1985 decision. In his newly asserted application to the Board, plaintiff stated, "[i]t is the applicant's position that this petition delineates newly discovered relevant evidence not previously considered by the Board in its original adjudication." Because, according to the plaintiff, "[t]he [ABCMR] did not have all the relevant evidence before it at the time of formulating its [first decision]," he requested the Board to reconsider his case in light of the alleged additional evidence. The additional evidence, which plaintiff argues the second ABCMR did not consider, included the following statement by COL Thompson to the plaintiff, allegedly supporting the existence of duress: "I'm afraid if you (CPT Heim) don't get out by signing a Request for Transfer—Form 831—LTC Rich is going to give you another bad OER."[3] Additionally, plaintiff alleges that, on one occasion, LTC Rich called him into COL Thompson's office, stating that "if [he] would transfer out of the unit back to the control group [LTC Rich] would give him a 'good OER.'" On February 24, 1998 the ABCMR denied plaintiff's second request for relief, stating:

The records of this office reveal that your original application was previously considered and denied by the Board. Favorable

---

**2.** After the Federal Circuit affirmed the decision of the Claims Court, plaintiff attempted to pursue legislative solutions to his claims, enlisting Florida Representative Alcee L. Hastings to intercede with the ABCMR on plaintiff's behalf. For example, the record reflects that on September 24, 1996, Representative Hastings petitioned the Army on Mr. Heim's behalf. Additionally, on April 28, 1998, Representative Hastings wrote a letter to Steve Buyer, Chairman of the Military Personnel Subcommittee, requesting assistance

in alleviating Mr. Heim's alleged grievances against the Army.

**3.** Although the Record does not specify an exact date on which COL Thompson's statement to Mr. Heim allegedly occurred, presumably it would have been made prior to June 6, 1981 when plaintiff signed the 1AA Army Form 831. Plaintiff states that "[a] meeting occurred in the Garrison Commander's office [COL Thompson's office]" at which time the statement was made.

action on any request for reconsideration must ... be based upon submission of new evidence or other relevant matter not previously available to the Board....

...

Your case has been carefully analyzed by the staff of the Board to determine whether you have submitted any new evidence, information or argument which was not in the record at the time of the prior Board consideration. While you have been kind enough to detail your contentions once again, these do not amount to new evidence. Accordingly, there is no basis for resubmitting your request to the Board.

Representative Alcee L. Hastings wrote to the Military Personnel Subcommittee on behalf of Mr. Heim, requesting the ABCMR to reconsider Mr. Heim's allegations for the third time. On October 7, 1999, the ABCMR responded to Representative Hastings's April 28, 1998 "expression of interest in the application for correction of military records submitted by Mr. Heim" by again denying plaintiff's application for reconsideration. The third ABCMR memorandum concluded, "[e]xpressions of dissatisfaction with previous decisions, contentions, unsubstantiated assertions, interpretations and argument ... do not warrant reconsideration by the Board." The Board also rejected plaintiff's claim that he had provided new evidence, information, or argument to the Board.

On March 21, 2000, plaintiff filed his complaint in the case at bar, Case No. 00–141C, which included the following allegations:

18. The Plaintiff's decision to transfer to non-pay status was involuntary; this decision was necessitated by the conduct of THOMPSON and RICH and the Plaintiff's decision to sign the transfer document was motivated by improper threats, made by THOMPSON.

19. HEIM reasonably feared retribution by his commanding officers, if he did not sign the transfer form and any reasonable officer in a similar situation, would have concluded that he or she had no other alternative, but to sign the form.

20. Defendant, the United States, operating and acting through the Department of the Army, Board for the Correction Of Military Records, abused its discretion in failing and or refusing to consider HEIM'S allegations of undue command influence.

21. HEIM has substantial[ly] sustained damages as a result of being compelled to sign a 1AA Form 831, authorizing his reassignment to a nonpay billet, in a United States Army Reserve Control Group.

In the present action, Case No. 00–141C, plaintiff seeks the same redress he sought in his previous United States Claims Court action: (1) back pay and all associated benefits he would have received had he not been transferred, (2) restoration to the military status he enjoyed prior to his transfer, and (3) correction of his military records to reflect this changed status. Plaintiff asserts jurisdiction in this court pursuant to 37 U.S.C. § 204 (1994)[4] and 28 U.S.C. § 1491 (1994).

Defendant has submitted a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the United States Court of Federal Claims (RCFC). Defendant contends that plaintiff's claim is barred by the six-year statute of limitations defined in 28 U.S.C. § 2501 (1994). Defendant further moves to dismiss plaintiff's claim for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4), asserting application of the doctrine of res judicata. Finally, defendant moves to dismiss the complaint under RCFC 12(b)(4) because "the statutory provision pursuant to which Mr. Heim seeks an award of back pay does not entitle him to a pay remedy."

## DISCUSSION

The defendant has filed a motion to dismiss the complaint for lack of subject matter jurisdiction or in the alternative for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(1) and 12(b)(4). Subject matter jurisdiction may be challenged at any time by the parties, by the

---

4. In plaintiff's earlier action filed in this court, Case No. 224–88C, plaintiff unsuccessfully asserted jurisdiction pursuant to 37 U.S.C. § 206 (1988).

court sua sponte, even on appeal. *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. U.S.*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir. 1997); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of jurisdiction); *Schweiger Const. Co. v. United States*, 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001); *Bowen v. United States*, 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); *RCS Enterps., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Federal Rules of Civil Procedure Rule 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. United States*, 49 Fed.Cl. 96, 100 (2001); *Coast Fed. Bank v. United States*, 48 Fed.Cl. 402, 443 (2000); *Alaska v. United*

*States*, 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993), *cert. denied sub nom.*, *Cedars–Sinai Med. Ctr. v. O'Leary*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."); *Vanalco v. United States*, 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied*, 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr.*, 533 U.S. 289, 121 S.Ct. 2271, 2279 n. 10, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1372 (Fed.Cir.2001); *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir.2000); *cert. denied*, —— U.S. ——, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1555–56 (Fed.Cir.1997); *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look be-

yond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States*, 249 F.3d at 1372 (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948; *see also Moyer v. United States*, 190 F.3d at 1318 ("Under the Tucker Act, when a cause of action is not based upon breach of contract against the government, the Court of Federal Claims has jurisdiction only over those constitutional provisions, statutes, or regulations that by their terms entitle a plaintiff to money."); *Tippett v. United States*, 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States*, 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied, en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009.

## I. Res judicata

Plaintiff alleges that the issues in dispute in the case now before the court, Case No. 00–141C, are different than the issues previously litigated in the United States Claims Court, Case No. 224–88C, decided in 1991. *See Heim v. United States*, 22 Cl.Ct. 341 (1991), *aff'd*, 949 F.2d 403 (Fed.Cir.1991).

According to the plaintiff, the issue in the case at bar is whether the second ABCMR "acted arbitrarily and capriciously on October 7, 1999, resulting in an abuse of discretion, by failing or intentionally refusing to consider the new issues raised by the Plaintiff, in his Petition For Reconsideration, dated September 12, 1996." Plaintiff further contends that unlike the 1988 Claims Court action, the action in the case at bar "[alleges] for the first time, that [plaintiff's] request for a transfer was the direct result of a '*quid pro quo*.' In other words, if the plaintiff did not agree to the transfer, he would be given a negative performance evaluation ..." (Emphasis omitted) The new and additional facts plaintiff alleged to the second ABCMR constituted a short statement by COL Thompson viewed by the plaintiff as suggesting possible coercion. Thus, plaintiff argues that the second ABCMR, in denying his petition for reconsideration, abused its discretion "by failing or intentionally refusing to examine the record, in view of the presentation of the new and additional facts regarding the critical '*quid pro quo*' allegation." Citing no relevant case law, plaintiff argues that, "[b]ased upon [the second ABCMR's] erroneous conclusion, it is abundantly clear that the Board [the second Board] did not have all of the relevant and material evidence before it when it formulated its initial decision."[5] (Emphasis omitted).

Defendant, in its motion to dismiss, however, contends that plaintiff's present claim is

---

5. Plaintiff tries to rely on *Skaradowski v. United States*, 200 Ct.Cl. 488, 471 F.2d 627 (1973), in support of his claim that the second ABCMR abused its discretion. The facts of *Skaradowski*, however, are not analogous to the facts presently before this court. In *Skaradowski*, the plaintiff sought correction of his military records to reflect that he had in fact served on active duty during July 1–5, 1966. *Id.* at 489, 471 F.2d at 630. Despite considerable evidence in support of Skaradowski's claims, including a statement by the Secretary of the Army requesting that plaintiff's records be changed, the ABCMR informed plaintiff that his request was denied because he failed to offer "evidence that [he] was on active duty" during the period at issue. *Id.* at 500, 471 F.2d at 630–31. Plaintiff in *Skaradow-*

*ski* subsequently brought his action before the United States Court of Claims, which held:

> The court has absolutely no doubt that under this liberal standard, together with the admitted facts, the board was required to change plaintiff's records to show that he was properly ordered on active duty for the period from 1–5 July 1966, and was therefore properly ordered to active duty for a period of more than 30 days within 10 U.S.C. § 1201. The board's contrary determination was arbitrary and capricious under the controlling standard as well as unsupported by substantial evidence and legally erroneous. The record compelled the board to correct plaintiff's records in order to "remove an injustice against him."

*Id.* at 489, 471 F.2d at 628.

barred by the doctrine of res judicata because "his cause of action has already been resolved against him" by the United States Court of Claims and by the United States Court of Appeals for the Federal Circuit. Defendant states, "[w]hether Mr. Heim was or was not involuntarily transferred to the USAR [C]ontrol [G]roup and whether that transfer was caused by duress or unlawful command influence has been firmly decided by this Court." Plaintiff also contends that both cases revolve around the same set of operative facts. Those operative facts are that plaintiff's commanding officers discussed a transfer to a USAR Control Group with the plaintiff, that plaintiff signed 1AA Army Form 831 requesting a transfer to the USAR Control Group, and that plaintiff asserted he was coerced into signing the voluntary transfer form. Finally, defendant argues that the same principles of law are applicable in both cases (the case at bar, Case No. 00–141C, and the 1991 United States Claims Court case, Case No. 224–88C), "namely whether Mr. Heim has cited to an applicable money mandating statute and whether the decision of the [second] ABCMR was arbitrary, capricious, unsupported by substantial evidence, or contrary to law." After review, the court finds that plaintiff already has had his day in court regarding the issues now presented before this court. Plaintiff is, therefore, barred from re-litigating those claims.

The United States Supreme Court summarized the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) as follows:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *Lawlor v. National Screen*

*Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); *id.*, § 48(bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra*, at 49, 18 S.Ct. 18; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (footnote omitted).

The doctrine of res judicata provides, as a prerequisite, that a "full and fair opportunity to litigate" claims occurs. *See Poyner v. Murray*, 508 U.S. 931, 933, 113 S.Ct. 2397, 124 L.Ed.2d 299 (1993) (quoting *Montana v. United States*, 440 U.S. at 153–54, 99 S.Ct. 970). The Supreme Court, however, has established that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see also In re Deckler*, 977 F.2d 1449, 1452 (Fed.Cir.1992); *Mark Smith Constr.*

*Co. v. United States*, 15 Cl.Ct. 32, 35–36 (1988). By affording a claimant only one opportunity to obtain redress, the doctrines conserve judicial resources, foster reliance upon judicial decisions, and protect litigants from vexatious and needless litigation. *Id.* at 36; *Martin v. United States*, 30 Fed.Cl. 542, 546, *aff'd*, 41 F.3d 1519 (Fed.Cir.1994) (table); *Lins v. United States*, 4 Cl.Ct. 772, 777, *aff'd*, 758 F.2d 666 (Fed.Cir.1984) (table).

■ The United States Court of Appeals for the Federal Circuit has held that application of the doctrine of res judicata requires (1) a prior final judgment (2) on the merits by a court of competent jurisdiction, (3) involving the same parties or their privies. Additionally, application of res judicata requires that (4) the claim from one action is based on the same set of transactional facts as were raised or that could have been raised in the prior action.[6] *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360, 1362 (Fed. Cir.2000), *reh'g and reh'g en banc denied* (Sept 28, 2000); *Int'l Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1328 (Fed.Cir.2000) (defining the fourth element as involving "the same claims that were raised, or could have been raised, in the prior action."); *see also Amgen, Inc. v. Genetics Institute, Inc.*, 98 F.3d 1328, 1331 (Fed.Cir. 1996). Further clarifying the fourth requirement in terms of claim preclusion, the Federal Circuit wrote:

[a] subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." [*Restatement (Second) of Judgments* § 24 (1982).] What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. *See id.* at 630; *see also Flores v. Edinburg Consol. Independent School Dist.*, 741 F.2d 773, 777 (5th Cir.1984).

*United Technologies Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir.1999). Elements one, two [7], and three, as stated in *Jet, Inc.*, are not disputed by either party in the case at bar. The alleged dispute in this action revolves around the fourth requirement, whether plaintiff's present claims in Case No. 00–141C are the same as those he raised in his 1991 United States Claims Court action, Case No. 224–88C.

■ In the case at bar, the court does not find that there has been an injustice or that the second Board acted arbitrarily, capriciously, or contrary to law when it refused to grant plaintiff relief based on his alleged newly discovered evidence. Plaintiff's alleged new evidence was available before his discharge in 1987 because COL Thompson and LTC Rich are reported by the plaintiff to have made the statements to the plaintiff prior to signing the 1AA Army Form 831 in 1981. The alleged new evidence appears to have occurred more than two years before plaintiff's transfer into the USAR Control

---

6. Defendant requests the court to use the test for determining applicability of *res judicata* articulated in *Mosca v. United States*, 224 Ct.Cl. 678, 679, 650 F.2d 288 (1980) (table, text at 1980 WL 99690), which is unpublished and not citable as precedent. The test found in *Mosca* for determining the applicability of res judicata requires that: (1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases. Although the court finds this test to be in harmony with established precedent, the court relies on the definitive language in published cases.

7. Although the United States Claims Court in *Heim v. United States* dismissed plaintiff's action in that court for failure to state a claims upon which relief could be granted, it also discussed

the issue of whether Mr. Heim was the subject of duress when he signed 1AA Army Form 831, voluntarily transferring him into the USAR Control Group:

The Board found that the evidence of record did not support plaintiff's claim of duress or unlawful command. Plaintiff's subjective belief that he was under duress did not alter the voluntary nature of his request for transfer; i.e., he was not ordered to complete the form. "Duress or coercion is not measured by a plaintiff's subjective evaluation of his situation, but by an objective test ...: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative ...." The circumstances did permit an alternative. Plaintiff could have refused to sign Form 831.

22 Cl.Ct. at 345 (citations omitted).

Group on October 28, 1983 and over six years before plaintiff's official discharge from the Army on November 28, 1987. Although the administrative record does not indicate that the first ABCMR specifically reviewed COL Thompson's exact statement when plaintiff first brought his claims before the ABCMR in 1983, it does reveal that the second ABCMR analyzed plaintiff's case "to determine whether [Heim] submitted any new evidence, information or argument which was not in the record at the time of the prior Board consideration." The second ABCMR determined that the alleged new evidence proffered by the plaintiff was not really new at all; rather, it was evidence that the first ABCMR had previously considered or that plaintiff could have offered to the first Board. Thus, plaintiff is precluded from "relitigating issues that were or could have been raised" in the prior action. *See Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. at 398, 101 S.Ct. 2424. Plaintiff has presented nothing to counter the reasonableness of the second ABCMR in determining that plaintiff was not coerced into signing the transfer form and that the first ABCMR had already considered or could have considered, plaintiff's evidence of alleged duress. In other words, in plaintiff's first petition for reconsideration, the second ABCMR recognized that, "while [plaintiff had] been kind enough to detail [his] contentions once again, these [contentions did] not amount to new evidence."

Although plaintiff insists his present cause of action is different than his cause of action in the prior United States Claims Court litigation, *Heim v. United States,* 22 Cl.Ct. at 345, plaintiff's complaint in the case now before the court, Case No. 00–141C, illuminates that both cases share one plaintiff and one common fundamental issue-whether plaintiff was coerced into signing the transfer form. Plaintiff's claims, first filed in the United States Claims Court and then in the United States Court of Federal Claims, are not distinct so as to be considered "separate and independent claim[s]." *Hurick v. Lehman,* 782 F.2d 984, 987 (Fed.Cir.1986). In *Hurick,* the plaintiff complained his discharge from the Navy was arbitrary and capricious. The plaintiff had twice requested the ABCMR to reconsider his claims and had

twice been denied the desired relief. Subsequently, plaintiff filed suit in the United States District Court for the Eastern District of California which held that the statute of limitations had run while plaintiff had requested reconsideration from the ABCMR. Consequently, the district court held that plaintiff's claims were barred by the statute of limitations. Plaintiff appealed to the United States Court of Appeals for the Ninth Circuit, which transferred the case to the United States Court of Appeals for the Federal Circuit. The Federal Circuit held,

In an attempt to avoid the precedents of the Court of Claims, the appellant argues that he is challenging not his discharge from the Navy but only the refusal of the Correction Board to give him relief from that discharge. The Claims Court has rejected that theory on the ground that the failure of the Correction Board to set aside a military discharge does not give rise to a separate and independent claim, since that action is merely ancillary to the discharge that the former serviceman is seeking to change.

*Id.* This court, in the case currently at bar, finds extensive factual overlap between plaintiff's 1991 United States Claims Court action, *Heim v. United States,* 22 Cl.Ct. 341 (1991) (Case No. 224–88C), and plaintiff's present action in the United States Court of Federal Claims, Case No. 00–141C. As stated in *Montana v. United States,* "Absent significant changes in controlling fact or legal principles" plaintiff's complaint should be barred by the doctrine of res judicata. *Montana v. United States,* 440 U.S. at 157, 99 S.Ct. 970.

Plaintiff also argues that "[d]efendant's lengthy discussion of the doctrine of res judicata ... entirely misses the mark, because since the Plaintiff submitted his request for reconsideration, he has attempted to gain appropriate redress through the legislative process." Plaintiff's argument that pursuing legislative relief eliminates the application of the res judicata doctrine is obviously incorrect. Based on the above discussion, plaintiff's claims are barred by the doctrine of res judicata. As discussed below, plaintiff's claims in the case currently before this court also fail for several additional reasons.

## II. Statute of Limitations

■ Suits against the United States are subject to a six year statute of limitations under 28 U.S.C. § 2501 (1994). This statute sets an express limitation on the jurisdiction granted to this court under the Tucker Act. *Franconia Assocs. v. United States*, 240 F.3d 1358, 1362 (Fed.Cir.2001), *reh'g and reh'g en banc denied* (Jun 12, 2001); *Alder Terrace, Inc. v. United States*, 161 F.3d at 1376–77; *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1454 (Fed.Cir. 1997); *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir.1990) (citing *Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." *Caguas Cent. Federal Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed.Cir.2000), *cert. denied*, 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d at 1454; *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988). Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed, and may not be waived by the court. *Alder Terrace, Inc. v. United States*, 161 F.3d at 1376–77; *Martinez v. United States*, 48 Fed.Cl. 851, 857 (Fed.Cl. 2001); *Entines v. United States*, 39 Fed.Cl. 673, 678 (1997), *aff'd*, 185 F.3d 881 (Fed.Cir.) (table), *cert. denied*, 526 U.S. 1117, 119 S.Ct. 1766, 143 L.Ed.2d 796 (1999); *McDonald v. United States*, 37 Fed.Cl. 110, 113 (1997), *aff'd*, 135 F.3d 778 (1998) (table).

■ "A claim first accrues 'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment ...'" *Lins v. United States*, 231 Ct.Cl. 579, 582, 688 F.2d 784, 786 (1982) (quoting *Nager Electric Co. v. United States*, 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966)), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788 (1983); *Franconia Assocs. v. United States*, 240 F.3d at 1362; *Alder Terrace, Inc. v. United States*, 161 F.3d at 1377; *Hopland Band of Pomo Indians v. United States*, 855

F.2d at 1577; *Oceanic Steamship Co. v. United States*, 165 Ct.Cl. 217, 225 (1964); *Bowen v. United States*, 49 Fed.Cl. at 675. In other words, "a cause of action against the Government first accrues when all of the events which fix the Government's alleged liability have occurred, and the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d at 1577; *Alder Terrace, Inc. v. United States*, 161 F.3d at 1377; *Cottrell v. United States*, 42 Fed.Cl. 144, 154 (1998); *Colon v. United States*, 35 Fed.Cl. 515, 517–18 (1996); *Anaheim Gardens v. United States*, 33 Fed.Cl. 773, 776 (1995).

■ "If disputes are subject to mandatory administrative proceedings, then the claim does not accrue until their conclusion," or until all of plaintiff's administrative remedies have been exhausted. *Lins v. United States*, 231 Ct.Cl. at 582, 688 F.2d at 786. (citing *Friedman v. United States*, 159 Ct.Cl. 1, 11, 310 F.2d 381, 387 (1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963)); *Brighton Village Assocs. v. United States*, 52 F.3d 1056, 1060 (Fed.Cir.1995). However, pursuing permissive administrative remedies does not toll the statute of limitations. *Lins v. United States*, 231 Ct.Cl. at 582, 688 F.2d at 787; *see also Brighton Village Assocs. v. United States*, 52 F.3d at 1060. When "an administrative remedy is permissive (i.e., suit may be brought without exhausting the remedy), the court has usually held that the running of limitations is not deferred or tolled by such optional administrative considerations." *Friedman v. United States*, 159 Ct.Cl. at 11–12, 310 F.2d at 388.

■ In military pay cases, "resort to a corrections board is a permissive, rather than mandatory, step that does not suspend the running of the statute." *D'Andrea v. United States*, 27 Fed.Cl. 612, 614, *aff'd*, 6 F.3d 786 (Fed.Cir.1993) (table); *Hurick v. Lehman*, 782 F.2d at 987. Thus, "exhaustion of administrative proceeding is not necessary to file suit in this court." *Andrews v. United States*, 43 Fed.Cl. 561, 565 (1999); *see Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir.1983); *Hurick v. Lehman*, 782 F.2d at 987. Moreover, "a claim based on an alleged

unlawful discharge from the military service accrues on the date of discharge." *Hurick v. Lehman,* 782 F.2d at 986 (citing *Wilson v. United States,* 231 Ct.Cl. 958, 959 (1982)); *Bonen v. United States,* 229 Ct.Cl. 144, 148, 666 F.2d 536, 539 (1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); *Kirby v. United States,* 201 Ct.Cl. 527, 531 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974).[8]

Defendant, in its motion to dismiss, alleges that plaintiff's claim accrued on November 28, 1987, the date of his discharge from the USAR, over twelve years prior to the commencement of the action currently before this court, and over ten years prior to the ABCMR's second denial (February 24, 1998) of plaintiff's claims and rejection of plaintiff's argument that newly discovered evidence should allow for reconsideration of his claims.[9] Defendant also asserts that the statute of limitations should not be tolled during plaintiff's attempts to pursue his administrative remedies with the ABCMR or with the courts. Defendant argues that, at the latest, the statute of limitations began to run on the date of plaintiff's discharge. The alleged coercion was said to have occurred sometime before plaintiff signed the 1AA Army Form 831 on June 6, 1981, and plaintiff's transfer occurred on December 12, 1981.[10]

Plaintiff, in his opposition to defendant's motion to dismiss, has failed to respond to defendant's allegations that the statute of limitations bars plaintiff's claims, other than to contend that defendant's statute of limitations argument does not apply because his present claim is different from his 1981 Claims Court claim and that he continued to pursue legislative remedies. Plaintiff argues that, because his present claim is new and distinct from any previous litigation, his statute of limitations should have begun to accrue on October 7, 1999, the date on which the second ABCMR denied his petition for reconsideration.[11] In accordance with controlling precedent, this court finds that the applicable start date for the statute of limitations is the date plaintiff was discharged from the USAR, November 28, 1987. A statute of limitations has no practical effect if all a plaintiff has to do to revive his cause of action is to claim the corrections board abused its discretion and file multiple proceedings in administrative and judicial tribunals. His petition for reconsideration to the second ABCMR did not toll the statute of limitations, and the second ABCMR's denial of plaintiff's petition did not give rise to a new cause of action. Plaintiff's claims are, therefore, barred by the statute of limitations.

### III. Money-mandating Statute

Regardless of plaintiff's statute of limitations and res judicata barriers, plaintiff also

---

**8.** Courts have established a different standard for military disability cases, holding that the statute of limitations accrues once the first statutorily authorized board finally denies the disability claim. *See Collins v. United States,* 47 Fed.Cl. 196, 199–200 (citing *Real v. United States,* 906 F.2d 1557, 1560 (Fed.Cir.1990)), *aff'd,* 243 F.3d 561 (2000) (table).

**9.** To the extent that plaintiff argues his claim is based on an illegal transfer into the USAR Control Group, rather than on an unlawful discharge, plaintiff's claims would still be time barred because his transfer into the Control Group occurred on December 12, 1981 and his first claim for relief was denied by the ABCMR on June 15, 1985. Both dates predate plaintiff's discharge from the USAR on November 28, 1987, and, therefore, offer the plaintiff no relief from the running of the statute of limitations.

**10.** Defendant also asserts that the doctrine of equitable tolling does not apply in this case. The court agrees. The doctrine of equitable tolling

only applies, for example, when the claimant has (1) actively pursued his judicial remedies but filed a defective pleading during the statutory period, (2) been induced by fraud by his opponent's conduct into allowing the filing date to expire, or (3) missed the filing date due to the government's concealment of the facts. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). None of these circumstances are applicable in this case. Plaintiff does not allege any facts or circumstances in support of any of the potential theories of equitable tolling, nor does the record support any of these theories.

**11.** As discussed earlier, plaintiff's third petition before the ABCMR (his second petition for reconsideration) was actually submitted by Representative Hastings as an inquiry on behalf of Mr. Heim.

fails to rest his claims upon a proper money-mandating statute. In the action before this court, plaintiff relies on general Tucker Act jurisdiction (28 U.S.C. § 1491) and on 37 U.S.C. § 204 (1994),[12] asserting, in the current complaint, that 37 U.S.C. § 204, not 37 U.S.C. § 206, "provides this Court with the authority to address actions and rulings of military correction boards." However, as defendant contends, plaintiff is incorrect in this assertion.

The United States Supreme Court has declared that a plaintiff must rely on a specific money-mandating statute independent of the Tucker Act, if this court is to have jurisdiction over claims demanding the payment of money: "The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948. The issue in the case at bar is whether 37 U.S.C. § 204 creates such a substantive right for the plaintiff. In *Testan*, the United States Supreme Court stated that such a right cannot be assumed:

> In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the argument ... that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation.

*Id.* at 400–01, 96 S.Ct. 948. There is no language in 37 U.S.C. § 204 that waives the government's sovereign immunity for the plaintiff's claims requesting back pay. Rather, 37 U.S.C. § 204 applies only to service members serving on full-time active duty, not reservist duty:

> The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title—(1) a member of a uniformed service who is on active duty; and (2) a member of a uniformed service, or a member of the National Guard who is not a Reserve of the Army or the Air Force, who is participating in full-time training, training duty with pay, or other full-time duty . . . .

37 U.S.C. § 204(a)(1)–(2). Active duty is defined as "[f]ull-time duty in a U.S. Military Service." 32 C.F.R. § 10.3 (1989). Plaintiff has not alleged that he served full-time active duty, nor has he asserted that he is owed back pay for reserve duty actually completed and uncompensated pursuant to 37 U.S.C. § 206. *See Banks v. Garrett*, 901 F.2d 1084, 1087 (Fed.Cir.1990) (concluding that under 37 U.S.C. §§ 204 and 206, plaintiff was not entitled to back pay because he had not participated in active duty activities following his transfer into a non-pay billet), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). Although a reservist may receive compensation, a reservist is not considered to be on full-time active duty and is not entitled

---

**12.** Plaintiff's previous action before the United States Claims Court relied upon 37 U.S.C. § 206 (1994) for jurisdiction, which the court found to be improper. Accordingly, plaintiff's complaint was dismissed for failure to state a claim upon which relief could be granted pursuant to RCFC 12(b)(4). *Heim v. United States*, 22 Cl.Ct. at 345. In dismissing the case, the court stated,

> The language of the Reservists Pay Mandating Statute does not reveal an intent to compensate reservists who have not performed their duties, except when those reservists were scheduled to perform but were unable to because of injury, illness, or disease. 37 U.S.C. § 206(a)(3). The plaintiff does not allege that he was prevented from performing the duties for which he now seeks compensation, because of injury, illness, or disease.

> While active duty officers are paid because of their status as such (*see* 37 U.S.C. § 204), "[u]nder the Reservists Pay Mandating Statute, a reservist is not entitled to compensation at the prescribed rate unless he is ordered to perform and actually performs the work."

*Heim v. United States*, 22 Cl.Ct. at 344 (quoting *Ayala v. United States*, 16 Cl.Ct. 1, 4 (1988)).

Because Mr. Heim had not performed any work for the military after he was transferred to the Control Group, he could not claim compensation under 37 U.S.C. § 206. *Heim v. United States*, 22 Cl.Ct. at 344. *See also Palmer v. United States*, 168 F.3d at 1314 (which agreed that reservists could only be paid pursuant to 37 U.S.C. § 206 for active duty and for "training actually performed.").

to basic pay under 37 U.S.C. § 204.[13] *Palmer v. United States,* 168 F.3d at 1314. Regardless of whether plaintiff was wrongfully transferred into non-pay status in the USAR Control Group, this court may not grant relief unless the government's waiver of sovereign immunity is "unequivocally expressed." *United States v. Testan,* 424 U.S. at 399, 96 S.Ct. 948. Such is not the case with 37 U.S.C. § 204 under these facts.

Defendant notes that plaintiff might complain that such a judgment leaves him without a way to remedy his grievance in the courts while granting persons on active duty adequate recourse. *See Palmer v. United States,* 168 F.3d at 1314. In this regard, the United States Court of Appeals for the Federal Circuit has stated, "This anomaly is the result of the juxtaposition of the Supreme Court's view of the Tucker Act and its requirement that there be a separate money-mandating act . . . ." *Id.* Consequently, plaintiff's only mode of recourse is to "petition Congress to change the nature of the pay mandate, or to provide a separate basis for relief in the Court of Federal Claims, independent of a money-mandating claim." *Id.* at 1315. Accordingly, this court is barred from hearing plaintiff's claims based on 37 U.S.C. § 204 (1994). The court, therefore, holds that plaintiff has failed to state a claim upon which relief can be granted pursuant to RCFC 12–b(4).

## CONCLUSION

Plaintiff's claim is barred by the statute of limitations and by the doctrine of res judicata. Furthermore, plaintiff's claim does not rest on a proper money-mandating statute. For these reasons, any one of which would preclude the plaintiff's claim, defendant's motion to dismiss is, hereby, **GRANTED.**

**IT IS SO ORDERED.**

---

**13.** Section 204 does provide for exceptions not pertinent here, allowing reservists who are physically disabled as a result of their duty performance to receive the basic pay section 204 provides. *See* 37 U.S.C. § 204(g)(1) and 37 U.S.C. § 204(h)(1). The facts in the present case do not substantiate such a claim for pay, nor does plaintiff allege that he satisfies the disability requirement in 37 U.S.C. § 204.